# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NELSON VALLE,
    Plaintiff,

    v.

GREEN TREE SERVICING, LLC,
    Defendant.

No. 3:16-cv-277 (SRU)

## <u>ORDER</u>

Beginning in 2013, *pro se* plaintiffs Brunilda Ramos-Ayala (formerly ValleCastro) and Nelson Valle, mother and son, have sued many people and entities associated with the collection of two debts: a consumer debt that originated in 2006 and a mortgage that originated in 2005. Both of those debts are in default and have given rise to state court actions. On February 22, 2016, four days before an omnibus hearing scheduled in Valle and Ramos-Ayala's three pending federal suits,[1] Nelson Valle, acting *pro se*, filed a fourth case against defendant-servicer, Green Tree Servicing, LLC (now known as Ditech Financial). (doc. 1) The complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110, *et seq.*, against Green Tree arising from its collection efforts regarding the mortgage debt (the subject of two of the previously pending federal actions). On April 7, 2016, Green Tree moved to dismiss the new complaint under the principles of preclusion, and additionally challenged the viability of the complaint on substantive grounds. (doc. 13)

---

[1] Those cases are *ValleCastro, et al. v. Tobin, Melien & Mahron, et al.*, 3:13-cv-1441 (SRU) (D. Conn.); *Valle, et al. v. Bendett & McHugh, PC, et al.*, 3:14-cv-1796 (SRU) (D. Conn.); and *Valle, et al. v. Torcia, et al.*, 3:15-cv-1081 (SRU) (D. Conn). In this Order, I refer to Valle's previous cases by the last four digits of their docket numbers for ease of reference.

For the following reasons, Green Tree's motion is **granted in part** with prejudice with respect to Claims One, Two, Five, and Six, as well as portions of Claims Three and Four. The motion is **denied in part** with respect to the portions of Claims Three and Four that relate to Green Tree's alleged misrepresentation of the owner of the debt.

## I.      Standard of Review

### A.   Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."

2

*Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II.    Background

The mortgage debt at issue was originated by Countrywide Home Loans, Inc. in 2005. *See, e.g.*, Def.'s Br., Exs. A and B (Mortgage Note and Deed)). On or around September 13, 2007, Countrywide informed Ramos-Ayala that the mortgage loan was in default. Compl. at ¶ 3.1. On or about October 17, 2011, the mortgage was assigned to the Bank of New York Mellon as trustee for certificate-holders of the CWABS, Inc. Asset-Backed Certificates Series 2005-4 (the "Trust"), and the assignment was recorded. Def.'s Br., Ex. C.

In a letter to Ramos-Ayala dated September 28, 2012, Green Tree stated that it had replaced Bank of America as the servicer of the mortgage debt. Def.'s Br., Ex. D. The letter also stated that it was "from a debt collector" and "an attempt to collect a debt." *Id.* On November 9, 2012, in response to Ramos-Ayala's letter disputing the debt, Green Tree identified the Bank of New York Mellon as the trustee for the Trust that owned the debt; stated that servicing had been transferred from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, to Green Tree on September 16, 2012; and enclosed a copy of the original promissory note, a credit reference inquiry, and a payment history on the loan. 1796 Green Tree Defs.' Mot. to Dismiss, Ex. F (doc. 56-6).

On July 15, 2014, an employee of Bendett & McHugh, the law firm that represented the Trust in the state foreclosure action, filed a notice of lis pendens on the mortgaged premises with Hartford County. 1081 Am. Compl., Ex. H. A Green Tree employee was listed on the notice as

the contact person for Green Tree, who would receive mail for the Trust as the plaintiff in the

foreclosure action. 1081 Am. Compl., Ex. I. On July 23, 2014, the Bank of New York Mellon on

behalf of the Trust, represented by Bendett, filed an action to foreclose on the mortgage in

Connecticut Superior Court. Def.'s Br., Ex. E (state foreclosure docket).

On or about September 2, 2014, Valle and/or Ramos-Ayala emailed the Bank of New

York Mellon to verify the ownership of the debt. 1081 Am. Compl., Ex. E. The Bank of New

York Mellon informed them that it was a Trustee for the Trust, and did not itself own the debt.

*Id.* It identified Bank of America as the servicer of the debt. *Id.* On the basis of that

communication, Ramos-Ayala filed a motion to dismiss the state court action for lack of standing

on September 19, 2014. Def.'s Br., Ex. E (entry 107.00). Ramos-Ayala's motion was denied on

December 10, 2014. *Id.* (entry 107.86).

A. Correspondence at Issue in the Present Complaint

The complaint in this action is predicated on the following chain of correspondence: On

April 24, 2015, in response to a letter from Valle, Green Tree stated that Bank of America was

the creditor and Green Tree was the servicer and note-holder of the mortgage debt. Compl., Ex.

A.[2] The April 24 letter did not include a disclosure that Green Tree was a debt collector. On May

11, 2015, Green Tree sent a monthly billing statement including Valle's name along with

Ramos-Ayala's in the address line, and stating that "a first notice or filing to initiate foreclosure

on your account has occurred." Compl., Ex. A2. The letter included a return address to a P.O.

Box in Rapid City, South Dakota. *Id.* Green Tree asserts that Valle's name was included because

---

[2] I note that letter was also discussed in the 1081 complaint. *See* 1081 Am. Compl. at ¶ 4.21.

he requested that all correspondence be addressed to him in a letter dated February 9, 2015.[3] Def.'s Br., Ex. G.

In response to the April 24 letter, Valle again requested validation of the debt in a letter dated May 1, 2015. Def.'s Br., Ex. I. Green Tree responded in a letter dated May 15, 2015, again stating that the "owner" of the debt was Bank of America. Def.'s Br., Ex. K.

## III.   Discussion

Valle alleges that Green Tree violated various provisions of the FDCPA and CUTPA by: (1) attempting to collect the debt after the statute of limitations had run; (2) failing to disclose its debt collector status in the April 24 letter; (3) falsely representing that Valle owed a debt to Green Tree by including his name in the address line of the billing statement; and (4) falsely representing that Bank of America was the owner of the debt. Green Tree raises three objections to Valle's claims: (1) they are barred by res judicata or collateral estoppel; (2) Valle lacks standing to bring any of the claims; and (3) the claims would also fail on substantive grounds.

### A.   Res Judicata / Collateral Estoppel

#### 1.   *Res Judicata*

"Res judicata bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012) (internal quotation, citation, alterations omitted). "The doctrine of *res judicata*, or claim preclusion, bars not only those claims or legal theories that were asserted in the prior action, but also those legal claims or theories that could have been

---

[3] The letter is dated 2014, but appears to have been sent and received in 2015 because it refers to a quitclaim deed that was signed in 2015.

asserted, regardless whether they were in fact raised by the parties, so long as they arise from the same transaction that formed the basis of the prior action." *Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009), *aff'd,* 378 F. App'x 109 (2d Cir. 2010) (internal quotation marks and citations omitted).

Green Tree argues that the claims in this case are barred by my dismissal with prejudice of the 1081 case on February 26, 2016. Green Tree would have a strong argument that res judicata should apply if the instant complaint had been filed *after* the 1081 case had been dismissed. But in the present case, I was aware of this complaint when I held the omnibus hearing and chose not to consolidate it with Valle's other cases or rule on it at that time. *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (vacating the district court's application of res judicata where both cases were pending on the active calendar and could have been consolidated). If Valle was a represented party, I would be concerned that the late filing of the instant complaint so close to the hearing for motions to dismiss his three pending cases was, in fact, a calculated and inappropriate strategy to prolong litigation. In light of the leeway granted to *pro se* parties, however, I will assume that the complaint was filed in good faith.

2. *Collateral Estoppel*

Green Tree argues that portions of the complaint can be dismissed on collateral estoppel grounds because they have already been decided in the 1796 action. "Collateral estoppel is permissible as to a given issue if (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to

support a valid and final judgment on the merits." *Gabriele*, 503 F. App'x at 93 (internal quotation marks and citation omitted).

Green Tree was an active party in the 1796 action, contrary to Valle's claims. It argues that when I granted its motion to dismiss the second amended complaint after briefing from both parties, I necessarily decided: (1) Green Tree's mailings from South Dakota did not violate the FDCPA; (2) Green Tree's attempts to collect the debt were not time-barred; and (3) Valle did not have standing to make a CUTPA claim against Green Tree. The first argument is moot—although he alludes to Green Tree's South Dakota address in the introduction to his complaint, Valle does not appear to be making a claim based on that issue. The second argument is correct—in the 1796 Order, I clearly held that the foreclosure action was not time-barred by any measurement. *See* (1796 doc. 75) at 18–19. That holding **collaterally estops Claim One**, which attempts to re-litigate whether the debt collection attempt was time-barred.

The third argument is more ambiguous. I did hold in the 1796 Order that Valle did not have standing to assert CUTPA claims against Green Tree for any of its actions in *that* case—however, the complaint at issue only discussed events through the end of 2014, and did not consider any Green Tree correspondence that was actually addressed to Valle. Whether Valle has standing to bring a CUTPA claim against Green Tree on the basis of correspondence addressed to him in 2015 was not "necessarily decided" in the 1796 Order, and accordingly, I cannot dismiss Claim Six on collateral estoppel grounds.

B. FDCPA Claims

Green Tree argues that Valle's FDCPA claims fail both for lack of standing and on the merits.

1. *FDCPA Standing*

Green Tree argues that Valle's FDCPA claims must fail for lack of standing because he did not sign the mortgage, was not a party in the foreclosure action, and accordingly is not an affected "consumer," as required by the statute. *See* Def.'s Br. at 12.

The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing." *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010). In analyzing whether a plaintiff has alleged an injury in fact, courts look to "whether plaintiff suffered a cognizable statutory injury and not whether a plaintiff suffered actual damages." *Id.* Several sections of the FDCPA provide for specific statutory protections for "consumers." The term "consumer" is defined in the FDCPA as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Thus, because he has not alleged any responsibility for the mortgage debt, Valle is not a consumer under the statute. The standing inquiry does not, however, end there. "Although some sections of the FDCPA refer specifically to consumers, the civil liability provision[ ] provides that 'any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . .' " *Kinkade v. Estate Info. Servs., LLC*, No. CV 11-4787 (AKT), 2012 WL 4511397, at *3 (E.D.N.Y. Sept. 28, 2012) (quoting 15 U.S.C. § 1692k(a)). Without deciding whether non-consumers could have standing under the FDCPA, the Second Circuit suggested in a summary order that courts could consider the specific provision under which the claim is brought. *Sibersky v. Goldstein*, 155 F. App'x 10, 11 (2d Cir. 2005). The *Sibersky* court's analysis further suggests that non-consumers may have standing to enforce FDCPA provisions not explicitly limited to consumers if they either "stand in the shoes of the consumer" or "allege injurious exposure" to the practice. *Id.* at 12.

Valle makes claims under sections 1692c, –d, –e, –f, –g, and –j. Sections –d, –e, –f, and –g are not explicitly restricted to consumers on the face of the statute. *See, e.g., Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 228 (D. Conn. 2014) (holding that section 1692f standing should not be restricted to consumers); *Kinkade*, 2012 WL 4511397, at *4 (discussing sections –d, –e, –f, –g in light of *Sibersky*). Section 1692j imposes liability on persons distributing deceptive forms to the same extent that liability is imposed on debt collectors under section 1692k. *See* 15 U.S.C. § 1692j(b). Section 1692k(a) permits "any person" to sue for FDCPA violations, and accordingly, by incorporating those limits into section 1692j, I assume that a non-consumer might also have standing to sue under that section. *See Aviles*, 49 F. Supp. 3d at 228 (applying the same reasoning in the context of section 1692f).

Section 1692c is limited to "consumers" on its face, however, and because Valle does not fall into the expanded categories included in that section, he has no standing to bring any claim under that section. *See Christy v. EOS CCA*, 905 F. Supp. 2d 648, 653 (E.D. Pa. 2012) (finding no standing under section 1692c where the plaintiff, father of the adult consumer, received communications addressed to him from the debt collector).

Valle argues that he has standing: (1) as the "owner" of the underlying property after it was quitclaimed to him on February 6, 2015; (2) as Ramos-Ayala's legal representative; and (3) as the named recipient of the correspondence at issue. Valle's first two arguments are easily dismissed. The current ownership of the property has no bearing on any of the remaining claims in this case, which involve procedural complaints about Green Tree's efforts to collect on a debt incurred by Ramos-Ayala. Indeed, I have already rejected a similar argument in the 1796 action. *See Valle v. Bendett & McHugh, P.C.*, No. 3:14-CV-1796 (SRU), 2015 WL 5797023, at *5 (D. Conn. Sept. 30, 2015) (rejecting Valle's claim to be a third-party beneficiary of the mortgage

agreement simply because of Ramos-Ayala's then-plan to devise the property to him). Second, Valle's claim to stand in the shoes of Ramos-Ayala because he is acting as her "agent" is insufficient, and has also been previously rejected. *See id.* ("[A]lthough Valle describes his responsibilities to his mother in this dispute in the legalistic terms of principal / agent and administrator, he has not established that any of those relationships have been legally recognized."). And to the extent that he relies on the power of attorney Ramos-Ayala conferred upon him, Compl., Ex. C, district courts in the Second Circuit have routinely held that "[a] power of attorney does not allow that person to proceed pro se on behalf of their principal." *Robinson v. Fischer*, 2014 WL 1289611, at *5 (N.D.N.Y. Mar. 13, 2014); *see also Miller v. Town of Morrisville*, 2015 WL 1648996, at *3 (D. Vt. Apr. 14, 2015) (same); *Bida v. Kuci*, 2014 WL 4905026, at *1 (E.D.N.Y. Sept. 30, 2014) (same); *DePonceau v. Pataki*, 315 F. Supp. 2d 338, 340 (W.D.N.Y. 2004) (same). *Cf. Wright-Kahn v. People's Bank, Bridgeport*, 2001 WL 902653, at *3 (D. Conn. July 25, 2001) (denying *pro se* plaintiff's motion to join the person holding her power-of-attorney in the case).

Valle's argument that he has standing on the basis of the communications addressed to him is, however, arguably sufficient. *See Valle*, 2015 WL 5797023, at *6 (holding same). Accordingly, I consider those claims on the merits.

### 2. *Substantive Analysis*

Valle's complaints primarily derive from an April 24, 2015 letter from Green Tree to Valle verifying the debt, Compl., Ex. A1. That letter was sent between when the Trust filed the state foreclosure action on July 23, 2014, and when it ultimately moved for strict foreclosure in that case on November 20, 2015.

In Claim Two, Valle asserts that the April 24, 2015 communication violated the FDCPA because Green Tree failed to identify itself as a debt collector in the communication. Any imaginable harm caused by that defect would be *de minimis*: the communication was clearly written in response to a letter from Valle and Ramos-Ayala and after numerous previous disclosures that Green Tree was a debt collector; it states in its text that Green Tree is the "servicer" of the debt; and the letter does not require any response from Valle in which any potential confusion about whether Green Tree was a debt collector could be abused. Accordingly, Claim 2 is **dismissed with prejudice.**

In Claim Three, Valle first claims that Green Tree violated the FDCPA when it included his name in the payment form, causing him to believe that he owed Green Tree a debt. "In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 252 (S.D.N.Y. 2011) (citing *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998)). That test nevertheless "does not conflate lack of sophistication with unreasonableness." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Here, as Green Tree points out, Valle's name was included on the bill pursuant to his request that Green Tree direct *all* communications related to the debt to him. *See* Def.'s Br., Ex. G at 2. ("This letter grants consent for your company and or its affiliates, to the extent that their claims and/or communications are intrinsically connected to the matter(s) at hand, to communicate with me ONLY not [Ramos-Ayala]."). Valle cannot now claim that the communications he *consented* to receive somehow violated the FDCPA or misled him. Accordingly, Claim Three is **dismissed with prejudice**.

In the remainder of Claim Three and Claim Four, Valle argues that Green Tree violated the FDCPA by identifying the owner of the debt as Bank of America in both the April 24 and May 14 letters, at the same time that it was acting on behalf of the Trust in the state foreclosure action. As the Eastern District of New York observed in *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013), "a false representation of the owner of the debt could easily mislead the least sophisticated consumer." *Id.* at 170–71. In *Fritz*, the defendants had admitted that a legal complaint had actually named an incorrect party as the owner of the debt, creating a risk that the consumer would attempt to pay off her obligation to the wrong party. *Id.* Similarly, in the present case, the misidentification of the debt's owner could potentially have led Valle to cause Ramos-Ayala to pay off the wrong party. The May 15 letter identifies Bank of America as the correct party to list as the "bank" in the "bank wiring instructions" for submitting a payoff of the debt. And, as discussed with respect to the consumer debt at issue in the 1441 complaint, the average consumer might reasonably be confused about which party he is supposed to pay when he is being sued by one alleged owner and told by his servicer that he can fully pay off the debt by making a payment to a different entity. *See ValleCastro v. Tobin, Melien & Mahron*, 2015 WL 6478412, at *7 (D. Conn. Oct. 27, 2015). Such misleading communications therefore at least arguably constitute a violation of section 1692e or –f. *Id.* Accordingly, I **deny** the motion to dismiss the relevant portions of Claims Three and Four.

In Claim Four, Valle also claims that Green Tree violated the FDCPA by describing itself using "creditor related" words, such as "note holder," "lender," and "insurance policy," when it was, in fact, a debt collector. Compl. at Claim 4 ¶ (a). To the extent that Valle is alleging that Green Tree misled him into believing it was the creditor, that has not been plausibly alleged. The April 24 letter clearly states that Green Tree is *not* the creditor: "Please be aware that Green Tree

12

does not own the account; we merely service it for a third party . . . ." Compl. at Ex. A1.

Accordingly, **that portion of Claim Four is also dismissed**.

In Claim Five, consistent with his other complaints, Valle assumes that the April 24,

2015 letter has *accurately* identified Bank of America as the owner of the debt, and thus that the

state court action on behalf of the Trust was illegitimate. As I pointed out in the 1796 case,

Ramos-Ayala already attempted to argue that the Trust did not have standing to bring the

foreclosure action in the state court, which argument was rejected. *Valle*, 2015 WL 5797023, at

\*10. And as in the 1796 case, pursuant to the principles of collateral estoppel, I cannot allow the

same argument to be litigated again here. *Id.* Accordingly, Claim Five is **dismissed with**

**prejudice.**

### C.  CUTPA Claim

Green Tree also challenges Valle's CUTPA claim, Claim 6, on both standing and

substantive grounds.

"The Connecticut courts apply 'traditional common-law principles of remoteness and

proximate causation to determine whether a party has standing to bring an action under

CUTPA.'" *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 231 (D. Conn. 2014) (quoting

*Conn. Pediatric Med. Ass'n v. Health Net of Conn., Inc.,* 302 Conn. 464, 28 A.3d 958, 962

(2011)). "[S]tanding under CUTPA requires that the plaintiff have some sort of business

relationship with the defendant business such that he suffers injury as either a consumer or

competitor of the defendant or as some other businessperson affected by its unfair or deceptive

acts." *Id.* (citations and internal quotation marks omitted).Valle does not fall into any of the

categories required for standing under CUTPA (consumer, competitor, or otherwise injured

businessperson); accordingly, his CUTPA claim is dismissed for lack of standing.

Accordingly, I **grant the motion to dismiss the CUTPA allegation**.

**IV.     Conclusion**

Green Tree's motion is **granted in part** with prejudice respect to Claims One, Two, Five, and Six, as well as portions of Claims Three and Four. The motion is **denied in part** with respect to the portions of Claims Three and Four that relate to Green Tree's alleged misrepresentation of the owner of the debt.

I note that the remaining portions of Claims Three and Four are duplicative, and allege only a single FDCPA violation. Accordingly, taking the most generous view of Valle's claims here, under 15 U.S.C. § 1692k, his recovery is capped at $1,000. During the pendency of this motion, the parties have been engaged in settlement discussions; I accordingly recommend that the parties continue to consider whether the case might be quickly resolved.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of March 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge